**LANE, Exr. v BERK, etc., et**

Probate Court, Franklin Co

No 86810. Decided Dec 3, 1941

Ray W. Poppleton, Columbus, for Ruth E. Berk et. defendants.

Jas. I. Boulger, Columbus, for Fidelity Trust Co, et.

Tussing & Lane, Columbus, for plaintiff.

### OPINION

By McCLELLAND, J.

This matter comes on to be heard upon the petition filed herein by the Executor of the Last Will and Testament of the deceased, the answer of Charles E. Brossman, the answer of Ruth Berk as an individual and as Administratrix of the estate of Harry S. Brown, deceased, and Ruth E. Berk as Executrix of the Last Will and Testament of Emma Woods, deceased, and also the answer and cross petition of Charles H. Hayes and others.

The facts are as follows: Edwin B. Woods, the testator, whose will is being construed, executed his Last Will and Testament on June 2, 1937. The testator died on July 27, 1939, and his will was duly admitted to probate. The pertinent portions of the will are as follows:

Item One directs that all of his just debts and funeral expenses be paid.

Item Two directs the erection of a suitable monument to cost not less than five hundred dollars nor more than one thousand dollars.

Item Three is in words as follows:

"In the event she survives me, I give, devise, and bequeath to my wife, Emma L. Woods, of Canal Winchester, Ohio, all of my property, after the pay-

ment of my just debts, funeral expenses, and the expenses of my last illness, and after deducting the cost of the monument and marker provided for hereinabove, of whatsoever kind and wheresoever situated, which I may own or have the right to dispose of at the time of my death, be the same real, personal, or mixed, for and during the period of her life."

"Item Four: Subject to the provision for my wife in Item Three hereinabove, I give and bequeath to my half-brother, William G. Brossman, of Columbus, Ohio, Fifteen Thousand and no/100 ($15,000.00) Dollars in cash, and, in addition thereto, I give and devise to my said half-brother my farm of 103.63 acres, more or less, in the south half of Section 6, Township 14, Range 20, Bloom Township, Fairfield County, Ohio."

"Item Five: Subject to the provisions for my wife in Item Three hereinabove, I give and bequeath to Gale Wright, of Canal Winchester, Ohio, ten shares of stock in The Canal Winchester Bank, of Canal Winchester, Ohio."

"Item Six: Subject to the provision for my wife in Item Three hereinabove, I give and bequeath to Nona Kramer, friend, of Canal Winchester, Ohio, ten shares of stock in The Canal Winchester Bank, of Canal Winchester, Ohio."

"Item Seven: All the rest and residue of my property of whatsoever kind and wheresoever situated, which I may own or have the right to dispose of at the time of my death, be the same real, personal, or mixed, subject to the provision for my wife in Item Three hereinabove, and after her death in the event she survives me, I authorize, empower and direct my Executor, hereinafter named, to sell at public or private sale, without first obtaining an order from any court, and for such price and upon such terms as he shall deem for the best interest of my estate, and I authorize, empower, and direct my said Executor to give such

bills of sale, certificates, deeds, and other instruments, as such Executor, as may be necessary to convey and transfer to the purchasers thereof any of the assets of my estate directed to be sold as aforesaid by him; and I direct my said Executor to divide the proceeds from the sale of said property equally among the children of my wife, Charles F. Brown, now residing in Canal Winchester, Ohio, Harry S. Brown, now residing in Canal Winchester, Ohio, and Ruth Brown Berk, of Youngstown, Ohio, share and share alike, to them and each and every one of them, their Executors, Administrators, and assigns absolutely and forever. Provided, however, that I desire the said children of my wife to effect an amicable division of my personal effects and other chattels among themselves within a month after my Executor has been appointed, or, in the event my wife survives me, within a month after her death, and my said Executor shall not sell such of my personal effects and other chattels as may have been so amicably divided in accordance with my desire."

William G. Brossman, the first legatee, and who was a half-brother of the testator, died July 27, 1937, which it will be noted, was just two years prior to the death of the testator. The surviving wife, Emma Woods, died on September 23, 1940. Charles F. Brown, one of the three legatees mentioned in Item Seven of the will, died on February 20, 1939, which date, it will be noted, is prior to the date of the death of the testator. William G. Brossman was a half-brother of the testator, they having had the same mother. William G. Brossman died without issue.

Charles F. Brown, one of the three legatees mentioned in Item Seven of the will, who predeceased the testator, also left no issue.

Harry S. Brown, one of the three legatees mentioned in Item Seven of the will, died January 15, 1941, leaving no issue.

The three Brown children mentioned in Item Seven of the will were the

582

children of the life tenant, the wife of the testator. They were stepchildren of the testator, never having been adopted by him and therefore neither relatives or heirs, had he died intestate. The widow of the testator elected to take under the will.

The question therefore presented is whether the legacy to William G. Brossman lapsed, and also whether the legacy to Charles F. Brown also lapsed, and if they did lapse, what is the course of devolution of the lapsed legacies.

The question therefore brings into consideration §10504-73 GC, which provides for the contingency in the event of the death of a devisee or legatee prior to the date of the death of the testator. **Sec. 10504-73** is in words as follows:

"When a devise of real or personal estate is made to a child or other relative of the testator, if such child or other relative was dead at the time the will was made, or dies thereafter, leaving issues surviving the testator, in either case such issue shall take the estate devised as the devisee would have done, if he had survived the testator. If such devisee leaves no issue and the devise be of a residuary estate or of the entire estate after (a) debts, (b) other legacies and devises, general or specific, (c) a life estate, or (d) any other interest less than a fee or absolute ownership, to such devisee and one or more children or relatives of the testator, the estate devised shall pass to and vest in such other devisee or devisees surviving the testator in such proportions as the testamentary share of each devisee in the devised property bears to the total of the shares of all of the surviving devisees, unless a different disposition be made or required by the will."

It will be noted that this statute provides for two sets of circumstances, one in which the devisee dies leaving issue, the other in which the devisee dies without issue. William G. Brossman left no issue. If his devise passes under the above named Section, it will have to pass under the second contingency therein named. If it does pass thereunder, it must be a residuary estate or the entire estate after debts, other legacies and devises, a life estate or any other interest less than a fee or absolute ownership. Upon examination of the will we find that Mr. Brossman has been devised specifically the sum of fifteen thousand dollars and also a specific farm consisting of one hundred and three acres of land. It is therefore our opinion █ that the devise and legacy to William G. Brossman does not pass under §10504-73 GC and therefore lapses.

It is therefore incumbent upon this Court to determine first, what becomes of the lapsed legacy and devise to Mr. Brossman, the half-brother of the testator. In our opinion the question of the devolution of lapsed bequests and devises has never been specifically decided by the Supreme Court of Ohio. The Supreme Court has, however, in the case of **Bradford v Bradford, Executor,** reported in **19 Oh St 546,** decided that where a legacy is forfeited by virtue of violating a condition against bringing an action to contest the will, the legacy passes into the residue of the estate.

A similar holding by the Court of Appeals, Muskingum County, Ohio, is contained in the case of **Bender v Bateman,** reported in **33 Oh Ap 66.**

The Court of Appeals of the Second District has also held that a trust fund set up for the life tenant falls into the residuary estate upon the death of the life tenant prior to that of the testator.

The Probate Court of Tuscarawas County, Ohio, has held in the case of **Stevens, Exr. v Hill, et,** reported in **1 OO 247,** that a general legacy made to a child or other relative who dies prior to the death of the testator, without issue, lapses and that such lapsed legacy passes under the residuary clause in a will unless such legacy is excluded from its provisions.

The only authority relied upon by Judge Lamneck was that referred to

in Page on Wills, but on an examination of that authority we find that it cites no Ohio cases in support of that proposition.

The courts of last resort in a number of the states have held that a lapsed legacy passes under the residuary clause, while the courts of last resort of other states have adopted a different rule and hold that lapsed devises pass to the heirs, while others hold that lapsed devises and bequests both pass to the heirs, and some hold that lapsed legacies pass to the administrator.

But we will first look to the will to ascertain the intention of the testator. In doing so we follow the cardinal principle in the construction of wills. There is also another well known principle in the construction of wills and that is when there is an ambiguity in the language of the will, the court may take into consideration the circumstances surrounding the testator at the time of making his will in order to determine his intention. The ambiguity referred to is not merely an ambiguity in the meaning of certain words of the will, but it refers also to the intent of the testator as disclosed by the entire context of the will. Some testimony was presented at the hearing of this matter relative to the surrounding circumstances, which testimony was received by the court and became a part of the record subject to the objection of counsel for the heirs of Mr. Brossman. Upon a consideration of this matter the Court now holds that it was correct in receiving the testimony and the Court will consider same.

Upon consideration of that testimony we find that it throws no light on the intention of Mr. Woods as to the question now before this Court.

Upon an examination of the will we find that the testator gave to his half-brother fifteen thousand dollars in money and also his farm, both, of course, being subject to the life estate of his surviving spouse. He then directs that the remaining portion of his estate should be sold after the death of his wife and divided among his three stepchildren. It would appear from the will that Mr. Woods expected Mr. Brossman to have his farm of one hundred and three acres and the fifteen thousand dollars in money. A similar situation in the estate was discussed by the Supreme Court, reported in **62 Oh St 411**. The Court, at page 415, uses the following language:

"That he did not expect those bequests to become void by his death within a year from the execution of the will is apparent from the fact that he made no provision for the disposition of the money in that event. And, though the bequests became ineffectual to carry the fund to the expressed objects of the testator's bounty, it seems obvious his intention was to limit the gift under the so-called residuary clause to whatever balance should remain after they and other charges were taken out of the fund from which they were directed to be paid."

No doubt Mr. Woods expected Mr. Brossman to enjoy the property after his death and that it should pass to whomsoever Mr. Brossman might give it should he survive him, and we can see no intention as gathered from the context of the will that he ever expected his stepchildren to have any more than he specifically gave them by the terms of the will.

Counsel for the heirs also take the position that where the executor is directed to sell the residuary estate and distribute it among the residuary legatees, that residuary legacy can only include the property which the testator had in mind at the time of making the will. In support of this proposition counsel for the heirs has referred us to a note found in 44 L. R. A. (N.S.) at page 810, as follows:

"In ascertaining the scope and effect of a residuary clause, reference will also be had to any power of sale contained in the will relating to the residue, and the residuary clause will not be construed to cover ineffectual disposition of property of the character

to which the power did not originally apply; nor to cover property which the testator in an ineffectual disposition thereof has evinced a desire not to have sold."

The above statement is quite persuasive in the mind of this Court, especially when we find that the devise to William G. Brossman was made to a half-brother, while the bequest of the remainder of the estate was made to persons who had no blood relation at all to the testator.

We deem it advisable to ascertain the theory or philosophy of the older courts relative to the devolution of lapsed legacies and devises. An excellent discussion of this is found in Volume 3 of Woerner's Third Edition of American Law of Administration at page 1476, where the author uses the following language:

"A distinction is observed in England in respect of devises void from the beginning, because there never was a devisee competent to take, and such as were good when made but became inoperative for some after-arising cause, and therefore lapsed. This distinction led to the recognition of a difference in the rights of heirs and residuary devisees respectively to void and lapsed devises. The testator was presumed to have given to the residuary devisee all that he intended him to have, and that therefore he intended him to have no more; hence the heir at law was held entitled to lapsed devises; but since a void devise does not constitute a testamentary act, the property mentioned therein cannot be said to have been given to any one, and must therefore be included in what is given to the residuary devisee. The distinction recognized in the American States, as well as in England before the Wills Act of 1838, between void or lapsed devises of real estate on the one hand, and void or lapsed legacies of personal estate on the other, arises naturally out of the doctrine assigning real estate to the heir or devisee, and personal estate to the executor or administrator. If real estate is not devised, it descends to the heirs; hence the heir is held to take, to the exclusion of residuary devisees, in the absence of statutory modification of the rule, all void and lapsed devises not otherwise disposed of by the will. But as to the personal estate, the executor anciently took it for the purpose of disposing of it according to the testator's direction, and was allowed to retain for his own benefit any surplus remaining after paying funeral expenses, testamentary charges, debts, and legacies; it was natural, therefore, that the residuary legatee should have a better right thereto than the executor.

Hence the rule is, that as to the personalty the will speaks from the time of the testator's death, and the residuary legatee takes not only what is undisposed of by the terms of the will, but that which becomes undisposed of at the death by disappointment of the intention of the will.

This (except as affected by statute) whatever be its origin, is the rule still in force generally in the United States. It is obvious, however, that, if the residuary legacy itself lapses, the testator, as to that, died intestate; hence, where the will gives to several persons specific shares of the residue, the share of such of them as may die before the testator will go to the next of kin."

The State of Ohio has, however, seen fit to enact a statute which prevents a lapse of legacies under certain circumstances. This statute is §10504-73 GC hereinbefore quoted. It is a general rule that statutes enacted in derogation of the common law are to be strictly construed and will apply to those subjects only which are specifically mentioned in the statute. It therefore follows that under that reasoning the devise to William G. Brossman would pass to the heirs of the testator and the bequest of fifteen thousand dollars would go to his personal representatives.

But we are now confronted with another principle of construction and that is that a will should be so construed as to prevent intestacy, and ap-

plying that rule the lapsed devise and bequest to Mr. Brossman would pass into the residue of the estate under the general residuary clause. This principle is well stated at §1427 of Vol. 4 of Page on Wills, Lifetime Edition, where the following language is used:

"If testator has not made provision for a gift over in case of the death or incapacity of the beneficiary, the devolution of the lapsed devise or legacy depends upon whether or not there is a general residuary clause in the will, which is sufficient to include the lapsed gift. If there is no general residuary clause, lapsed legacies and devises both pass as intestate property; the lapsed legacies passing to the next of kin, and the lapsed devises passing to the heirs. The persons who take are those who would have taken under the statute of descent and distribution, at testator's death, if he had died intestate; and this is not affected by the fact that the gift which has lapsed was to take effect at some period of time after the death of the testator."

At §1428 we find the following language:

"If the will contains a general residuary clause, the terms of which are broad enough to include the lapsed gift in question, the devolution of the gift depended, before modern legislation, upon whether it was realty or personalty. After-acquired personalty could pass by testament. For this reason a general gift of personalty was possible; that is, by apt language, testator could make a gift which could pass personalty of a given amount or of a given value, which was not restricted to specific articles belonging to testator when the testament was made; since any personalty which he owned at his death, whether he owned it when he made the testament, or whether he acquired it thereafter, could pass under the testament, if it corresponded to the description therein. A general residuary clause was a general gift of personalty, as distinguished from a specific gift of specific personalty. As an original question, there might have been some doubt as to the fair construction of a general residuary clause. It might seem as likely that the words 'rest' or 'residue' means 'property of which I have not attempted to make disposition hereby' as that they mean 'property of which I have not made a valid disposition hereby'. It became settled, however, that a general residuary clause included all personal property of which testator had not made a valid disposition whether he had attempted to make disposition thereof or not, unless such property was excluded from the general residuary clause by some language showing such intention. Accordingly, it is generally held that a lapsed legacy, other than a lapsed residuary legacy, becomes a part of the residuum upon lapse; and passes to the residuary legatees."

The author of the above quoted text has cited a large number of cases from the courts of last resort of other states, but counsel for the heirs has cited in support of his proposition courts of equal authority to the effect that a lapsed devise should pass to the heirs of the testator. It is significant that none of the citations include any citation from the Supreme Court of Ohio. The great weight of authority seems to support the rule that the lapsed legacy passes to the residue.

We have examined a number of cases both of the Supreme Court and the inferior courts of Ohio, and we fail to find any case in which a distinction has been made between a lapsed legacy and a lapsed devise as to the devolution of same. There exists in Ohio no more a distinction between ancestral and non-ancestral property, neither is there a distinction in the devolution of real or personal property, all passing under the same law and in the same manner. It seems to be a well established policy in Ohio that there should be no distinction in the devolution of a lapsed legacy or lapsed devise.

It is our opinion that the proposition that the lapsed devise and bequest to Mr. Brossman passes to the heirs of the testator is supported not only by historical precedent, but by logic, but it seems that the rule against intestacy which throws the lapsed legacies into a general residuary clause is supported by the great weight of authority of the courts of last resort of the United States, and we are ██ reluctantly compelled to hold that the devise to Mr. Brossman passes under the residuary clause.

We therefore are compelled to reach the conclusion that the lapsed bequest of fifteen thousand dollars follows the lapsed devise into the residuum of the estate.

The second question presented is far less difficult than the one which we have just been considering. This involves the construction of Item Seven of the Will, with particular reference to the devolution of the legacy to the step-child who predeceased the testator. After directing the executor to convert all the rest and residue of his property into cash he uses the following language:

"And I direct my said Executor to divide the proceeds from the sale of said property equally among the children of my wife, Charles F. Brown, now residing in Canal Winchester, Ohio, Harry S. Brown, now residing in Canal Winchester, Ohio, and Ruth Brown Berk, of Youngstown, Ohio, share and share alike, to them and each and every one of them, their Executors, Administrators, and assigns absolutely and forever."

Counsel for the contending parties have presented very persuasive arguments in support of their respective positions. In construing this provision as well as the former provision in the will, we look to the circumstances surrounding the testator at the time he made his will as such circumstances are disclosed by the testimony. We are sorry to say that these circumstances give us no help in ascertaining the intention of the testator. Neither does the subsequent provision in the same item of the will give us any help. We therefore are limited to the rules of law in construing the terminology used by the testator.

It is our opinion that we are bound by the rule adopted by the Supreme Court in 67 Oh St 541, in which case the court without opinion, sustained the lower court in the case of Jewett v Jewett, reported in 21 C. C. 278. That case is almost identical with the one now before the Court. In that case the testator used the following language:

"To my brothers, Andrew J. Ferris, Charles K. Ferris, and my sister, Phoebe Ferris, all my property, real, personal and mixed, of whatever nature and wherever situated, equally to them and their heirs forever, share and share alike."

It is to be noted that the language used therein is almost identical with the language used by the testator in the case under consideration. This decision, as we have noted, has been sustained by the Supreme Court in 67 Oh St 541. Under the stare decisis rule this Court is bound by that construction and we find no later case altering that rule. We therefore deem it unnecessary to discuss the rulings of lower courts nor the courts of last resort outside of Ohio.

We therefore must come to the conclusion that the gift to ██ Charles F. Brown, who predeceased the testator, lapsed and passes to the heirs of the testator.

An order may be drawn accordingly.